UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CONTINENTAL TITLE AGENCY, LLC,

    Plaintiff/Counter-Defendant,

v.

FIFTH THIRD BANCORP,

    Defendant/Counter-Plaintiff.

_____/

CASE NO. 2:15-cv-11595

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.   INTRODUCTION**

Before the Court is Defendant/Counter-Plaintiff Fifth Third Bank's Rule 12(c) Motion for Judgment on the Pleadings.  The instant action arises from a dispute in a check collection process between the Plaintiff/Counter-Defendant Continental Title Agency and Defendant/Counter-Plaintiff Fifth Third Bank.  Continental Title Agency deposited a check for $395,500.00 in association with a real estate transaction into its account with Fifth Third Bank, and the check was later revealed to be a counterfeit.  Before Fifth Third Bank received the notice of dishonor from the paying bank, Continental Title Agency instructed Fifth Third Bank to wire out the funds to Continental Title's client.  Fifth Third Bank eventually notified Continental Title of the returned check and charged back the funds from the account.  Continental Title brought the instant action against Fifth Third Bank alleging two counts: (1) violation of 12 C.F.R. § 229.33 for failing to timely notify Continental Title of the returned check; and (2) tortious interference with business relationships by charging back $395,500.00.  In its answer,

Fifth Third Bank brought three counterclaims against Continental Title Agency: (1) breach of contract; (2) the right to chargeback under the U.C.C.; and (3) breach of transfer warranty. On August 17, 2015, Fifth Third Bank filed the instant Rule 12(c) motion for judgment on the pleadings with respect to the two counts of the Continental Title Agency's Complaint and the breach of contract claim of Fifth Third Bank's Counterclaim. For the reasons that follow, the Court **GRANTS** Defendant's motion.

## II. STATEMENT OF FACTS

Plaintiff/Counter-Defendant Continental Title Agency, LLC ("Continental Title") is a title insurance agency conducting escrow business in association with real estate transactions. Defendant/Counter-Plaintiff Fifth Third Bank is an Ohio banking corporation. Prior to this suit, Continental Title maintained several business accounts with Fifth Third Bank, including the account at issue (the "2124 Account"). The parties dispute whether the 2124 Account is a trust account, as well as the extent of Fifth Third Bank's knowledge of Continental Title's business activities as an escrow agent.

On July 16, 2014, Continental Title deposited a check (the "Check") for $395,500.00 into the 2124 Account as a buyer's (the "Buyer") earnest money deposit for a real estate transaction. The face of the check identifies the "JP Morgan Chase Bank, N.A., Toronto Branch" as the issuing bank. (Doc. 4, Ex. A). Continental Title contends that it was advised on July 18, 2014, that the funds from the Check were "good," or the check had "cleared," and the 2124 Account's online statement confirmed that the funds were available for withdrawal. However, Fifth Third Bank denies the allegations that the check had cleared.

On July 24, 2014, Continental Title requested Fifth Third Bank to wire transfer $395,500.00 from the 2124 Account. Continental Title contends that the wire transfer request was initiated by the Buyer, who advised Continental that he was not going through with the real estate transaction and requested that the funds be wired to another account. On the same day, Fifth Third Bank processed the wire transfer as requested.

On July 28, 2014, Fifth Third Bank received notice from J.P. Morgan Chase (the paying bank) that the Check was being returned as an unpaid counterfeit item. On August 1, 2014, four days after the date that Fifth Third Bank received notice from the paying bank, Fifth Third Bank's representative advised Continental Title via e-mail that the Check was a counterfeit item. (Doc. 11, Ex. D). The Fifth Third Bank immediately charged back the amount of the dishonored Check together with return fees for a total of $395,544.00 from the 2124 Account.

Subsequently, Continental Title complained to Fifth Third Bank regarding the chargeback. On August 18, 2014, Continental Title and Fifth Third Bank entered into an agreement (the "August 18 Agreement") to address the dispute and "cooperate in pursuing any and all remedies to recover the $395,500.00 from third parties." (Doc. 11, Ex. E). In the agreement, Fifth Third Bank agreed to reverse the $395,500.00 chargeback to the 2124 Account immediately in exchange for Continental Title's agreement to deposit $100,000.00 into a segregated account (the "Segregated Account") on August 18, 2014, to deposit another $50,000.00 by September 18, 2014, and a final $50,000.00 by October 20, 2014. The agreement provides:

> The Segregated Account may provide a source of repayment to Bank should the parties agree, or should a court of competent jurisdiction

> determine, that Continental is liable for all or a portion of the liability resulting from the return of the Customer Check. Bank and Continental agree that neither Party can withdraw or debit any funds from the Segregated Account without mutual agreement of the Parties or an order of a Court of competent jurisdiction."

(Doc. 11, Ex. E, at 39).

Continental Title made the first deposit of $100,000.00 due on August 18, 2014, but failed to make the second or third deposits of $50,000.00 each due on September 18, 2014, and October 20, 2014. On October 16, 2014, Fifth Third Bank debited $100,000.00 from the Segregated Account. Continental Title demanded a return of the $100,000.00, and Fifth Third Bank refused.

On April 1, 2015, Continental Title filed a complaint in the Circuit Court for the County of Oakland. In the Complaint, Continental Title alleges two counts against Defendant Fifth Third Bank: (1) violation of Regulation CC for failure to timely notify Continental Title of the returned Check; and (2) tortious inference with business relationships by seizing funds from the 2124 Account. Continental Title requests the Court (1) to declare that Fifth Third Banks does not have a valid chargeback claim against Continental Title for the $395,000.00 relating to the Check; (2) to order Fifth Third Bank to refund the $100,000.00 on deposit in the Segregated Account, and award statutory interest, costs, attorney fees and such further legal and equitable relief; and (3) to enter a monetary judgment against Fifth Third Bank for damages caused by the tortious inference with its business relationship, and related costs, interest and attorney fees.

On May 4, 2015, Defendant Fifth Third Bank removed the case to this Court. On May 11, 2015, Defendant Fifth Third Bank filed its answer to the Complaint, and asserted three counterclaims against Continental Title: (1) breach of the Commercial

Account Rules controlling the 2124 Account; (2) a declaration of its right to chargeback from the 2124 Account pursuant to U.C.C. § 4-214 (Mich. Comp. Laws § 400.4214); and (3) breach of transfer warranty under U.C.C. § 4-207 (Mich. Comp. Laws § 440.4207). Defendant requests the Court to enter a judgment against Continental Title for $395,500.00 along with its costs and reasonable attorney fees.

On August 17, 2015, Defendant/Counter-Plaintiff Fifth Third Bank filed the instant Rule 12(c) motion for judgment on the pleadings with respect to the two counts of the Continental Title's Complaint and Count I of Fifth Third Bank's Counterclaim.

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applies the same standards that govern motions to dismiss under Rule 12(b). See Fed. R. Civ. P. 12(c); Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 761 (6th Cir. 2006). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." JP Morgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007).

Federal Rule of Civil Procedure 12(d) provides that if matters outside the pleadings are presented in a Rule 12(c) motion and such matters are not excluded by the court, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). The court may consider matters outside the pleadings without converting the motion to one for summary judgment if those matters "are referred to in the plaintiff's complaint and are central to [the plaintiff's claim.]" Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997). The court may also consider matters of which it may take judicial

5

notice, such as public records, judicial proceedings, and other materials "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Bowers v. Wynne, 615 F.3d 445, 470 (6th Cir. 2010). Both parties attached evidentiary materials in their briefs, but all materials attached are matters that were referred to in the pleadings and central to the claims or matters that the Court did not rely upon in rendering its judgment. Therefore, the Court declines to convert the instant Rule 12(c) motion into one for summary judgment.

**IV.   ANALYSIS**

   **A. Regulation CC Violation**

Continental Title alleges that Fifth Third Bank violated the Federal Reserve's Regulation CC by failing to timely notify Continental Title of the returned Check. Specifically, Regulation CC requires a depository bank to inform its customer of a returned check by "midnight of the banking day following the banking day on which it received the returned check." 12 C.F.R. § 229.33. It is undisputed that Fifth Third Bank did not inform Continental Title of the returned Check until four banking days later. However, the parties dispute whether Regulation CC applies to the Check at issue, which was drawn on J.P. Morgan Chase Bank N.A.'s Toronto office. (Doc. 4, Ex. A).

The Board of Governors of the Federal Reserve System issued Regulation CC to regulate, among other things, banks' duties to make deposited funds available for withdrawal and to expedite the collection and return of checks. 12 C.F.R. § 229.1. Regulation CC does not apply to all "checks" or all "banks." Regulation CC defines the term "check" primarily as "[a] negotiable demand draft drawn on or payable through or at an office of a bank." 12 C.F.R. § 229.2(k). Regulation CC specifically eliminates its

applicability to any bank's foreign offices. "Unless otherwise specified, the term bank includes all of a bank's offices in the United States, but not offices located outside the United States." 12 C.F.R. § 229.2(e). Therefore, Regulation CC does not apply to a check issued by a bank's office located outside of the United States.

The official commentary further confirms this geographical limitation on Regulation CC's applicability. "Check is defined in section 602(7) of the EFA Act as a negotiable demand draft drawn on or payable through an office of a depository institution *located in the United States*." 12 C.F.R. § 229 app. E (II)(K)(1) (emphasis added). "Unless otherwise specified, the term bank includes all of a bank's offices in the United States. The regulation does not cover foreign offices of U.S. banks." 12 C.F.R. § 229 app. E (II)(F)(3). The Consumer Compliance Handbook, published by the Federal Reserve, further clarifies that, in the context of Regulation CC, "[t]he term 'check' does not include checks drawn in a foreign currency or checks drawn on a bank located outside the United States." Consumer Compliance Handbook: Regulation CC Availability of Funds and Collection Checks 1, n.1 (Fed. Reserve Sys. Bd. of Governors Div. of Consumer and Cmty. Affairs 2015).

In the present case, Regulation CC is inapplicable because the Check at issue is drawn on a bank's foreign office, specifically, the J.P. Morgan Chase Bank's Toronto office. In its Response, Plaintiff argues that Regulation CC applies to the Check at issue because the paying bank, J.P. Morgan Chase Bank, N.A., is a U.S. bank, not a foreign bank. In support this argument, Plaintiff supplies FDIC certification indicating J.P. Morgan Chase Bank, N.A., is a federally insured bank in the United States. (Doc. 11, Ex. F). Plaintiff further supplies the screenshot of J.P. Morgan Chase Bank's

7

website stating that "[d]eposits with JPMorgan Chase Bank, N.A., Toronto Branch, are **not** insured by the Canada Deposit Insurance Corporation." (Doc. 11, Ex. H).

Continental Title's argument that J.P. Morgan Chase Bank is a U.S. incorporated bank has no bearing on the determination of Regulation CC's applicability. The plain language of Regulation CC and its official commentary clearly establish that the regulation's applicability is predicated on the physical location of a bank's office, not on the bank's place of incorporation. See 12 C.F.R. § 229 app. E(II)(F) (noting that Regulation CC applies to a foreign bank's U.S. offices, but does not apply to a U.S. bank's foreign offices). The regulation and the commentary further establish that this geographical limitation extends to Regulation CC's applicability to checks. See 12 C.F.R. § 229 app. E(II)(K)(1). Consequently, Regulation CC does not apply to the Check at issue, and Continental Title cannot sustain its claim against Fifth Third Bank under 12 C.F.R. §§ 229.33 and 229.38.

Even if Regulation CC applies, Continental Title cannot establish that Fifth Third Bank is liable for any damages due to Regulation CC's "no harm no foul" rule." Under Regulation CC, "[t]he measure of damages for failure to exercise ordinary care is the amount of loss incurred, up to the amount of the check, reduced by the amount of the loss that party would have incurred even if the bank had exercised ordinary care." 12 C.F.R. § 229.38(a). In the present case, Continental Title instructed Fifth Third Bank to wire out the funds back to the Buyer on July 24, 2014, but Fifth Third Bank did not receive notice of dishonor from J.P. Morgan Chase Bank until July 28, 2014. The loss would have been incurred even if the Fifth Third Bank had timely notified Continental Title of the dishonored Check. Plaintiff argues that the delay "deprived Continental of

8

the chance to catch the perpetrators [of the scam]." This statement is mere speculation insufficient to establish that the alleged delay caused actual damages. Therefore, even if Regulation CC applies, Continental Title cannot sustain its claim for any damages. See Denkewalter & Assocs., Ltd. v. Cole Taylor Bank, No. 10-CV-4899, 2011 WL 3164460, at *4 (N.D. Ill. July 27, 2011) (rejecting plaintiff's Regulation CC claim against the collecting bank because plaintiff failed to establish actual damages caused by the alleged delay where the funds at issue was already wired out of the account two days before the collecting bank received notice of dishonor).

In its Response to the instant motion, Continental Title further alleges that Defendant Fifth Third Bank failed to exercise ordinary care under the U.C.C. because it failed to provide a notice of dishonor by the "midnight deadline or within a longer reasonable time." Mich. Comp. Laws. § 440.4214. Continental Title does not allege this U.C.C. violation in its Complaint, or even mention the U.C.C. in its Complaint. Its attempt to assert this new claim in the Response to the present Rule 12(c) motion without first seeking leave to amend is inappropriate. Therefore, the Court declines to adjudicate this improperly asserted claim. For the reasons above, the Court dismisses Count I of Continental Title's Complaint regarding the alleged Regulation CC violation.

### B. Tortious Interference with Business Relationships

To establish a claim for tortious interference with a business relationship, a plaintiff must prove four elements: (1) the existence of a valid business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship; and (4) resultant damage to the plaintiff. Cedroni Assocs., Inc. v.

9

Tomblinson, Harburn Assocs., Architects & Planners, Inc., 821 N.W.2d 1, 3 (Mich. 2012). "To fulfill the third element, intentional interference inducing or causing a breach of a business relationship, a plaintiff must demonstrate that the defendant acted both intentionally and either improperly or without justification." Dalley v. Dykema Gossett PLLC, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010). A plaintiff may do so by either "proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of an act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003).

"A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." Badiee v. Brighton Area Sch., 695 N.W.2d 521, 539 (Mich. Ct. App. 2005). On the other hand, "[t]o establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference. Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." BPS Clinical Labs v. Blue Cross & Blue Shield of Mich., 552 N.W.2d 919, 925 (Mich. Ct. App. 1996). Essentially, plaintiff must show that the interferer did something "illegal, unethical or fraudulent." El-Sayed v. Bank of Am., N.A., No. 13-12458, 2014 WL 3870785, at *6 (E.D. Mich. Aug. 7, 2014) (quoting Dalley, 788 N.W.2d at 696).

Plaintiff Continental Title alleges that Defendant Fifth Third Bank tortiously interfered with its business relationships with its customers by charging back funds from the 2124 Account on August 1, 2014, resulting in Continental Title's eventual business

10

shutdown. Continental Title sets out two alternative theories on the impropriety of the August 1 chargeback.

Continental Title first alleges that Fifth Third Bank's August 1 chargeback was an act wrongful per se because Fifth Third Bank had waived its right to chargeback Continental because of the late notice of dishonor, presumably in violation of Regulation CC's timely notice requirement under 12 C.F.R. § 229.33 or the U.C.C.'s similar "midnight deadline rule." This argument is meritless. As Defendant correctly points out, Plaintiff cannot claim that Fifth Third Bank waived its right to chargeback due to the alleged Regulation CC violation because Regulation CC does not apply to the Check at issue as discussed above. Nor can Plaintiff claim that Fifth Third Bank waived right to chargeback for violating the U.C.C. "midnight deadline rule" when the U.C.C. specifically authorizes charging back even if notice is untimely, providing that "[i]f the return or notice is delayed beyond the bank's midnight deadline or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain return from its customer . . ." Mich. Comp. Laws. § 440.4214(1).

Alternatively, Continental Title alleges that Fifth Third Bank's August 1 chargeback was a lawful act done with malice and unjustified in law where the Fifth Third Bank improperly seized funds and threatened to seize funds from the 2124 Account, even though Fifth Third Bank knew that the Escrow Account contained no Continental Title funds. Continental Title specifically alleges that the 2124 account was an escrow account created solely for Continental Title to deposit customers' funds in connection with its role as an escrow agent. Continental Title further contends that Fifth Third Bank was aware of the nature of Continental Title's escrow business but

nonetheless applied the chargeback to the 2124 Account with the intention to drive Continental Title out of business. Continental Title relies on four exhibits to support these contentions:

- A screen shot from Fifth Third Bank's website marketing its "Escrow Manager Online" service. (Doc. 11, Ex. A).
- Materials prepared by Fifth Third Bank for Continental Title acknowledging that Continental Title maintained "escrow/trust" accounts at the bank. (Doc. 11, Ex. B).
- Account statements of the 2124 Account that titled the account as "ESCROW ACCOUNT." (Doc. 11, Ex. C).
- The August 1, 2014 email from Fifth Third Bank representative Brian Downs to Continental Title notifying it of the dishonored Check where Mr. Downs referred the 2124 Account as "the escrow account.' (Doc. 11, Ex. D).

Plaintiff cannot establish that the chargeback was a lawful act done with malice and without justification. Plaintiff's theory that Fifth Third Bank intended to drive it out of business is implausible on its face given that there remained $4,328,906.39 in the 2124 Account as of July 31, 2014. (Doc. 11, Ex. C., at 7). This high balance could hardly lead Fifth Third Bank to believe Continental Title's business would fold with the August 1 chargeback of $395,544.00.

Further, to establish "malice," Plaintiff must prove that Defendant, at minimum, performed the chargeback with an "improper motive." BPS Clinical Labs., 552 N.W.2d at 925. "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." Id. In the present

case, two pieces of evidence are dispositive.  First, the Commercial Account Rules, the contract controlling the 2124 Account, specifically provides that "[i]f any Item is returned to [Fifth Third Bank] unpaid by any means (including electronically) or form at any time for any reason, [Fifth Third Bank] will reverse the credit to, or otherwise debit your Account or any other Account of [Continental Title] with [Fifth Third Bank] for the amount of the credit . . ." (Doc. 4, Ex. D, at 4).  Second, U.C.C. § 4-214 specifically provides that a collecting bank has the right to charge back for a returned check in a provisional settlement.  Mich. Comp. Laws. § 440.4214(1).  Taken together, Fifth Third Bank had a reasonable belief that it had the right to chargeback the funds from 2124 Account under both the U.C.C. and the controlling contract.  Enforcing one's legal and contractual rights is a legitimate business reason.  Therefore, Fifth Third Bank's reasonable belief that it was enforcing its legal and contractual right effectively rebuts the claim that it was acting with malice and without justification.  See Formall, Inc. v. Cmty. Nat'l Bank of Pontiac, 421 N.W.2d 289, 293 (Mich. Ct. App. 1998) (upholding a dismissal of the tortious interference claim and noting that defendant's actions in securing plaintiff's loan payment pursuant to the provisions of the promissory notes are motivated by legitimated business reasons).

This District addressed essentially the same argument in Experts, LLC v. JPMorgan Chase & Co., No. 13-cv-12550, 2013 WL 4487508 (E.D. Mich. Aug. 20, 2013).  In Experts, the plaintiff, a company specializing in loan modification consulting, brought a tortious interference with business relationships claim against J.P. Morgan Chase Bank for closing its bank account.  Id. at *1.  J.P. Morgan Chase Bank contended that, after Expert's customers reversed large numbers of Automated Clearing House

transactions, Chase closed Expert's bank account under its right pursuant to the account's controlling agreement. Id. at *2. In that case, the court rejected the plaintiff's contention that Chase's decision to close the account was unlawful or that it was done with malice and without justification, noting that the account's controlling agreement specifically permits Chase to close the account "at any time with or without cause." Id. at *4. Similarly, in the present case, the 2124 Account's controlling agreement and the relevant U.C.C. provision justify Fifth Third Bank's decision to chargeback. Therefore, Plaintiff's tortious interference claim cannot be sustained.

Continental Title's repeated contention that the 2124 Account is an escrow account is unavailing. As Continental Title admits itself, "[a]s a title company holding monies for clients in escrow, (similar to the way attorneys hold money in client trust accounts for clients), *Continental owed legal obligations with respect to those monies*." (Doc. 11, at 5-6) (emphasis added). Continental cites to multiple statutes related to an escrow agent's fiduciary duties. Even assuming that the 2124 Account was an escrow account and that Fifth Third Bank knew that it was an escrow account, none of these statutes cited indicates that the legal obligations relating to the escrow monies are owed by anyone other than Continental Title. Nor did the parties reach a separate escrow agreement imposing a fiduciary duty onto the Fifth Third Bank. Merely alleging that a bank account is an escrow account does not impute any legal or contractual obligation of an escrow agent onto the bank.

Furthermore, nothing in the pleadings or exhibits even suggests that Fifth Third Bank was expected to apply any extra care to the monies in an escrow account. Plaintiff repeatedly references the marketing materials prepared by Fifth Third Bank

promoting its "Escrow Manager Online" service as evidence of Fifth Third Bank's own recognition of the 2124 Account as an escrow account.  (Doc. 11, Ex. A, B).  However, the parties admit that the "Escrow Manager Online" service does not apply to the 2124 Account.  Even assuming that it does, the provisions of Treasury Management Services Terms and Conditions Book relating to the Escrow Manager Online services specifically provide, "[Fifth Third Bank is] only acting as a depositary bank; [Fifth Third Bank] will not be providing escrow services or otherwise acting as an escrow agent for [Continental Title] . . . any and all responsibilities for providing escrow agent services to [Continental Title's] clients remain with [Continental Title]."  (Doc. 4, Ex. C., at 49).  Consequently, Continental Title cannot claim that Fifth Third Bank acted with malice in charging back from the alleged escrow account, as there is not even any reasonable expectation for the bank to treat an escrow account differently from any other bank account.

Finally, Continental Title contends that it has pled with the required specificity by comparing its pleadings with the allegations in Auburn Sales, Inc. v. Cypros Trading Shipping, Inc., No. 14-10922, 2015 U.S. Dist. LEXIS 116403 (E.D. Mich. Sept. 1, 2015). Plaintiff contends that, in both cases, "the plaintiff[s] alleged that defendant[s] committed a wrongful (illegal) act which had ramifications on the plaintiff's ability to do business," which is sufficient to sustain a tortious interference claim at the pleading stage.  (Doc. 11, at 16-17).  Continental Title's reliance on Auburn Sales is misplaced.  In Auburn Sales, the plaintiff alleged that the defendants obtained counterfeit automotive parts, and mixed and sold them with legitimate parts purchased from the plaintiff.  2015 U.S. Dist. LEXIS 116403 at *2-3. The plaintiff further alleged that plaintiff's supplier customers refused to do business with it after they learned of defendants' wrongful act.

Id. at *3. The court held that plaintiff sufficiently pled a tortious interference claim where the alleged "intentional comingling counterfeit and mislabeled parts" is a per se wrongful act given that said conduct violates federal law. Id. at *8-9. In contrast to Auburn Sales, Continental Title cannot establish a per se wrongful act to sustain its tortious interference claim.

For the reasons above, the Court dismisses Count II of Continental Title's Complaint regarding the claim of tortious interference with business relationships.

### A. Breach of Contract

Fifth Third Bank contends that the 2124 Account is subject to the Commercial Account Rules, which expressly allow the bank to chargeback, or obtain a refund of, any deposit or credit to the 2124 Account for dishonored checks. The Check at issue was returned as counterfeit; thus Fifth Third Bank contends that it was entitled to obtain the chargeback as it did on August 1, 2014. Fifth Third Bank continues to contend that, since Fifth Third Bank reversed this chargeback on August 18, and now is unable to obtain a refund from Continental Title, it is entitled to obtain this refund from Continental.

As a preliminary issue, the parties dispute whether the Fifth Third Bank's Commercial Account Rules are applicable to the 2124 Account at issue. Continental Title denies that the Commercial Account Rules are applicable and argues that it "did not and would not agree to terms which allowed Fifth Third to simply withdraw its customers' money from a pooled escrow account – those funds belonged to third parties." This argument is unavailing. The contract controlling the 2124 Account provides that a customer accepts and agrees to the Commercial Account Rule "[b]y

opening an Account and either signing the signature card for the Account or using the Account in any way." (Doc. 4, Ex. D, at 1). Further, Continental Title does not deny that its representative signed the signature page of the Master Treasury Management Agreement. (Doc. 4, Ex. B, at 13). The Master Treasury Management Agreement specifically incorporates Fifth's Third's Treasury Management Terms and Conditions. (Doc. 4, Ex. B, at 9). The Terms and Conditions, in turn, expressly state that all transactions in the account at issue are subject to Fifth Third's Commercial Account Rules. (Doc. 4, Ex. C, at 1). Consequently, the 2124 Account is governed by the Commercial Account Rules.

Unless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, unambiguous contracts must be enforced as written. Rory v. Continental Ins. Co., 703 N.W.2d 23, 26 (Mich. 2005). Absent ambiguity, contractual interpretation begins and ends with the actual words of a written agreement. See Henderson v. State Farm Fire & Cas. Co., 596 N.W.2d 190, 193-94 (Mich. 1999). The purpose of interpreting a contract is to determine and enforce the intent of the parties as expressed in the contract. Old Kent Bank v. Sobczak, 620 N.W.2d 663, 666-67 (Mich. Ct. App. 2000). Unambiguous contract language should be enforced according to the plain and ordinary meaning of its terms. DaimlerChrysler Corp. v. Wesco Distrib., Inc., 760 N.W.2d 828, 833 (Mich. Ct. App. 2008).

In this case, an examination of the contract language of the Commercial Account Rules is sufficient. The Commercial Account Rules clearly provide: "When [Continental Title] deposit[s] or cash[es] a check, draft or other item with [Fifth Third Bank] . . . by any means, [Fifth Third Bank] act[s] as [Continental Title's] agent in collecting the Item.

[Continental Title has] the risk of loss for each Item throughout the collection process and [is] solely responsible for the return, rejection and collectability of each Item." (Doc. 4, Ex. D, at 3). The Commercial Account Rules further provide: "[Fifth Third Bank] may reverse or chargeback any deposit or other credit to [Continental Title's] Account if it is reversed or returned to [Fifth Third Bank] for any reason at any time, or was otherwise the subject of an error." (Doc.4, Ex. D, at 4).

Continental Title sets forth three arguments against the Fifth Third's breach of contract claim: (1) the Rule 12(c) motion is inappropriate because Continental Title's Complaint against Fifth Third Bank is well pled; (2) Fifth Third Bank violated Regulation CC for failing to provide timely notice of dishonor; and (3) Continental Title asserts a tortious interference claim which entails larger damages than the $395,500 sought by Fifth Third Bank. All three arguments are meritless. Regarding its first argument that its Complaint is well pled, the inquiry here is whether Defendant Fifth Third Bank can sustain its counterclaim. Whether Plaintiff's Complaint is well pled or not has no bearing on this inquiry. Regarding Continental Title's second argument that Fifth Third Bank violated Regulation CC, the Court has concluded that Regulation CC has no applicability in the present case. Regarding Continental Title's third argument based on its tortious interference claim, the Court has concluded that Continental Title cannot sustain such a claim. Consequently, Continental fails to bring any persuasive argument to rebut Fifth Third Bank's breach of contract claim.

The Court therefore concludes that, under the clear and unambiguous language of the Commercial Account Rules, Fifth Third Bank is entitled to obtain a refund of $395,500.00. Since the parties established the Segregated Account to provide a source

of repayment, and Fifth Third Bank already seized $100,000.00 from this account, Fifth Third Bank is entitled to a judgment for $295,500.00.

### B. Attorney Fees

Lastly, Fifth Third Bank requests the Court to award attorney fees and costs as provided under the contract between parties. The Commercial Account Rules provide: "[if Fifth Third Bank is] brought into or must initiate any legal proceedings regarding [Continental Title] or [its] Account, including for the collection of overdraft, [Continental Title] agree[s] to reimburse [Fifth Third Bank], to the extent allowed by law, for any reasonable attorneys' fees and costs that [Fifth Third Bank] may incur." (Doc. 4, Ex. D, at 19). Continental Title does not raise any specific argument in response to this request. Under this unambiguous contract, Fifth Third Bank is also entitled to reasonable attorney fees and costs.

### V. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion for Judgment on the Pleadings. Both counts of Continental Title's Complaint are **DISMISSED**. A judgment for $295,500.00, along with its costs and reasonable attorney fees, is entered in favor of Fifth Third Bank under Count I of its Counterclaim. Because Fifth Third Bank's remaining two counterclaims seek the same relief awarded by the Court on Count I, Counts II and III are **DISMISSED** as moot.

**IT IS SO ORDERED.**

Date: January 11, 2016  s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 11, 2016.

                                            s/ Kay Doaks
                                            Case Manager